Sheehan & Associates, P.C.
Spencer Sheehan
spencer@spencersheehan.com
(516) 303-0552

United States District Court
Southern District of New York                                         7:19-cv-04706

| | |
|---|---|
| Francis McVetty, Jane Doe, individually and on behalf of all others similarly situated | |
| Plaintiffs | |
| - against - | Complaint |
| Garmin USA, Inc. | |
| Defendant | |

Plaintiffs by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.  Garmin USA, Inc. ("defendant") manufactures, distributes, markets, labels and sells portable navigation devices to consumers for use in automobiles, all-terrain vehicles (ATVs) and personal movement from third-party retailers, including brick-and-mortar stores and online, and directly from defendant's website (the "Products").

2.  The Products include various models including Drivesmart, Nüvi, Drive, DriveAssist.

3.  The models all include the basic feature set of a color screen within a black frame which will attach to a flat surface to facilitate use, primarily while driving.

4.  The variations of the models are distinguished by additional features such as voice-activated navigation, traffic updates, Bluetooth (wireless) calling, smart notifications via app, Wi-Fi map and software updates and access to live services via app.

1

5. The image below is a standard Garmin device, the "7" referring to the screen size in inches followed by "LMT-S," referencing Lifetime Maps & Traffic (United States).

DriveSmart 7 LMT-S



6. All of the Products are designated by "LM" (Lifetime Maps) or "LMT" (Lifetime Maps/Traffic).

7. The packaging contains a call-out in the upper-left corner, "Lifetime Maps & Traffic" and the Product name, "Garmin DriveSmart 7 With Lifetime Maps & Traffic EX."



8. The advertising for the Products, point-of-sale marketing, retailers' catalogues and websites, including images distributed by defendant, contains banners touting "Free Lifetime Maps & Traffic" or "Free Lifetime Maps," depending on the device model.



9. In today's age, consumers feel like new electronic devices – navigation tools, smart phones, digital cameras, computers, tablets – are released far sooner than necessary, given that their current devices maintain functionality for their purposes.

10. Moreover, given that the prices of these items have increased at levels far outpacing the consumer price index and wage growth amongst most Americans, there is a clear incentive to plunk down several hundred dollars, but with the comfort of knowing your next device is a long way off.

11. The Lifetime Maps & Traffic Claims are an inducement to consumers who would not have paid as much for a navigation device in the first instance, given they might otherwise expect to require a replacement product after a few years.

12. Despite the representations of Lifetime Maps & Traffic, consumers are misled that the "lifetime" referred to in the marketing of the devices is false, deceptive and misleading.

13. At no point prior to the time of sale did defendant, acting through its privies, make the terms of the lifetime maps and traffic updates available to consumers.

3

14. The warranties that the Products would receive lifetime map and traffic updates were unambiguous and did not disclaim the provision of this feature in any conspicuous or prominent fashion.

15. The actual warranty terms for the lifetime maps and traffic updates are found on defendant's website[1]:

## Traffic Terms & Conditions

### Lifetime Traffic

Lifetime traffic extends for the useful life of your Garmin traffic receiver or as long as Garmin receives traffic data from its traffic supplier, whichever is shorter. A traffic receiver's "useful life" means the period during which the receiver (a) has the required technical capabilities to utilize current traffic data service and (b) is capable of operating as intended without major repairs. Traffic content not available in all areas.

### Live Traffic

To access live traffic, you must download the free Smartphone Link app. User's data plan charges, if any, will apply. Contact your mobile service provider for more information about your service plan's data and roaming rates. Requires Bluetooth-enabled smartphone (sold separately).

Lifetime traffic extends for the useful life of your Garmin traffic receiver or as long as Garmin receives traffic data from its traffic supplier, whichever is shorter. A traffic receiver's "useful life" means the period during which the receiver (a) has the required technical capabilities to utilize current traffic data service and (b) is capable of operating as intended without major repairs. Traffic content not available in all areas.

16. The warranty terms for the lifetime maps are even more restrictive[2]:

## Lifetime Maps Terms & Conditions

If you purchase a nüMaps Lifetime subscription (sold separately) or if your Garmin product comes bundled with a nüMaps Lifetime or other lifetime map subscription, you will receive map data updates when and as such updates are made available on Garmin.com during the useful life of 1 compatible Garmin product or as long as Garmin receives map data from a third party supplier, whichever is shorter. A product's "useful life" means the period during which the product (a) has sufficient memory capacity and other required technical capabilities to utilize current map data and (b) is capable of operating as intended without major repairs. A product will be deemed to be out of service and its useful life to be ended if no updates have been downloaded for such product for a period of 24 months or more. Unless otherwise stated, the updates you receive under the subscription will be updates to the same geographic area included with your Garmin product when originally purchased. In some instances, your Garmin product might not have sufficient memory remaining for you to load an update to the map data, in which case you will need to either (a) select reduced map data coverage for your updates, or (b) purchase separately a microSD™/SD™ card (if and as applicable to your Garmin product) and load all or a portion of the map data coverage for your updates to the card and insert the card into the microSD/SD card slot contained in your Garmin product. If neither of the measures in (a) or (b) can be used to address your product's lack of sufficient remaining memory, then Garmin may conclude that the "useful life" of your product has expired. Garmin may terminate your nüMaps Lifetime or other lifetime map subscription at any time if you violate any of the terms of this agreement or your subscription. Your nüMaps Lifetime subscription or other lifetime map subscription may not be transferred to another person or another Garmin product.

If you purchase a nüMaps Lifetime subscription (sold separately) or if your Garmin product comes bundled with a nüMaps Lifetime or other lifetime map subscription, you will receive map data updates when and as such updates are made available on Garmin.com during the useful life

---

[1] https://www.garmin.com/en-US/legal/ltdisclaimer
[2] https://www.garmin.com/en-US/legal/lmdisclaimer

4

of 1 compatible Garmin product or as long as Garmin receives map data from a third party supplier, whichever is shorter. A product's "useful life" means the period during which the product (a) has sufficient memory capacity and other required technical capabilities to utilize current map data and (b) is capable of operating as intended without major repairs. A product will be deemed to be out of service and its useful life to be ended if no updates have been downloaded for such product for a period of 24 months or more. Unless otherwise stated, the updates you receive under the subscription will be updates to the same geographic area included with your Garmin product when originally purchased. In some instances, your Garmin product might not have sufficient memory remaining for you to load an update to the map data, in which case you will need to either (a) select reduced map data coverage for your updates, or (b) purchase separately a microSD™/SD™ card (if and as applicable to your Garmin product) and load all or a portion of the map data coverage for your updates to the card and insert the card into the microSD/SD card slot contained in your Garmin product. If neither of the measures in (a) or (b) can be used to address your product's lack of sufficient remaining memory, then Garmin may conclude that the "useful life" of your product has expired. Garmin may terminate your nüMaps Lifetime or other lifetime map subscription at any time if you violate any of the terms of this agreement or your subscription. Your nüMaps Lifetime subscription or other lifetime map subscription may not be transferred to another person or another Garmin product.

17. Defendant's offer of lifetime maps and traffic updates permitted defendant to arbitrarily discontinue the provision of the bargained-for service by deciding that a device lacks "sufficient memory capacity" to receive and utilize the updates.

18. This is self-dealing and deceptive because whether or not the Products will retain the memory capacity to continue with updates is entirely dependent upon the *prior* updates distributed by defendant to consumers.

19. Further, defendant's reliance on "major repairs" as a condition to cease providing updates fails to recognize that the hardware consumers purchased was only part of the transaction, in addition to the service of lifetime maps and traffic updates.

20. In those instances where plaintiff and consumers encountered a need for standard and customary repair services, defendant's third-party agents and update programs, including but not limited to EasySoft Limited and Garmin Express, failed to promptly perform said repairs

21. The outsourced customer support and the communication difficulties, including

language barriers, between consumers and support representatives causes undue frustration such that consumers are unable to restore their devices to working order.

22. Further, the customer support personnel retained, trained and supervised by defendant, regularly advises consumers that the problem is not with the Products, but their own computers – firewalls, faulty drivers, "viruses," etc.

23. In such instances, plaintiff and consumers are forced to pay additional money to receive the goods and/or services they initially purchased.

24. Garmin Express is one of the avenues defendant directs consumers to perform updates, yet the inconsistency of defendant's proprietary program frustrates and stymies the ability of consumers and plaintiff to seek the updates they were promised.

25. Defendant's claims of lifetime maps and traffic updates is rendered illusory given that they do not take reasonable and timely steps to perform their obligations.

26. All of the limitations described herein were not communicated to consumers prior to, or at, the point of sale.

27. No reasonable consumers understand or interpret "lifetime" to mean sooner than the actual lifetime of the device as measured by its ability to function with reasonable memory capacity.

28. Defendant consistently requires consumers who are eligible to have their devices repaired and undergo troubleshooting to incur additional out of pocket expenses for replacement parts and/or labor associated with the repair and/or replacement of their Products when the Products fail prior to the expiration of their warranted life.

29. Defendant also unfairly charges consumers who attempt to make a warranty claim

6

additional fees, just for defendant to inspect their Products to determine whether or not a warranted loss or condition has occurred.

30. Defendant's undisclosed terms – retaining unilateral discretion about whether or not the device was still "capable" of being updated based on memory availability – overlooks that memory usage of the devices is within the control and province of defendant, given its exclusive access to modify the available storage through the update process.

31. Defendant's actions constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendant's Products.

32. The Products contain other representations which are misleading and deceptive.

33. As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $129.99 and upwards of $549.99, excluding tax – compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

34. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

35. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

36. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

37. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

additional fees, just for defendant to inspect their Products to determine whether or not a warranted loss or condition has occurred.

30. Defendant's undisclosed terms – retaining unilateral discretion about whether or not the device was still "capable" of being updated based on memory availability – overlooks that memory usage of the devices is within the control and province of defendant, given its exclusive access to modify the available storage through the update process.

31. Defendant's actions constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and use of Defendant's Products.

32. The Products contain other representations which are misleading and deceptive.

33. As a result of the false and misleading labeling, the Products are sold at premium prices – no less than $129.99 and upwards of $549.99, excluding tax – compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

34. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

35. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

36. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

37. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

38. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

39. Plaintiff is a citizen of Westchester County, New York.

40. John and Jane Doe plaintiffs are citizens of the other 49 states who have been affected by the conduct alleged here but their true identities are not fully known.

41. John and Jane Doe may be used in the complaint to refer to representatives of sub-classes of the various states and at such time their identities will be disclosed.

42. The allegations as related to laws of other states where no named plaintiff has been disclosed serves as a placeholder upon joinder or amendment.

43. Plaintiffs purchased the Products based upon the representations on the packaging.

44. Plaintiff's Products remain functional yet are denied traffic and map updates, due to defendant's failures to promptly perform standard troubleshooting and repairs, caused by inherent defective qualities of the Products.

45. Defendant is a Kansas corporation with a principal place of business in Olathe, Kansas.

46. During the class period, plaintiffs purchased one or more Products for personal use, consumption or application with the representations described herein, for no less than the price indicated, *supra*, excluding tax, within their districts and/or states.

47. Plaintiff paid this premium because prior to purchase, plaintiff saw and relied on the misleading representations.

48. Plaintiff would consider purchasing the Products again if there were assurances that

the Products' representations were no longer misleading.

## Class Allegations

49. The classes will consist of all consumers in the following states: all, New York, Idaho, Ohio, Massachusetts, California, who purchased any Products containing the actionable representations during the statutes of limitation.

50. A class action is superior to other methods for fair and efficient adjudication.

51. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

52. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

53. Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

54. Plaintiff(s) is/are an adequate representative because his/her/their interests do not conflict with other members.

55. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

56. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

57. Plaintiff(s) counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

58. Plaintiff(s) seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350, California Consumers
Legal Remedies Act, Civ. Code §§ 1750-1785 ("CLRA")
and Consumer Protection Statutes of Other States and Territories</u>

59. Plaintiffs and John and Jane Doe plaintiffs, representing the 49 other states where they reside and purchased the Products, incorporate by reference all preceding paragraphs and assert causes of action under the consumer protection statutes of all 50 states.

a. Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et. seq.*;

b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c. Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d. California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* and Unfair Competition Law, Cal. Bus. Prof. Code §§ 17200- 17210 *et. seq.*;

e. Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f. Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et. seq.*;

i. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;

j. Georgia Fair Business Practices Act, §10-1-390 *et. seq.*;

k. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l. Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r.  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s.  Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t.  Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u.  Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x.  Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y.  Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z.  New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa. New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb. New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc. New York General Business Law ("GBL") §§ 349 & 350;

dd. North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

ee. Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ff. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

gg. Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608(e) & (g);

hh. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

ii. South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

jj. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

kk. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

ll. Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

mm. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

nn. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

oo. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*

60. Named plaintiff asserts causes of action under New York General Business Law ("GBL") §§ 349 & 350.

61. Jane Doe plaintiffs assert causes of action under the laws of the other 49 states, including the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 ("CLRA").

62. Defendant's acts, practices, advertising, labeling, packaging, representations and omissions are not unique to the parties and have a broader impact on the public.

63. Plaintiffs desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type and representations.

64. Jane Doe California plaintiff and members of the California Subclass engaged in transactions as consumers who bought the Products for personal, family, or household consumption or use. Cal. Civ. Code § 1761(d)-(e).

65. In accordance with Civ. Code § 1780(a), Jane Doe California Plaintiff will seek injunctive and equitable relief for violations of the CLRA and an injunction to enjoin the deceptive advertising and sales practices.

66. After mailing appropriate notice and demand Jane Doe California Plaintiff will have mailed and/or have amended the complaint to include a request for damages. Cal. Civil Code § 1782(a), (d).

67. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA.

68. Defendant violated the consumer protection laws of the states indicated.

69. Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Jane Doe California Plaintiff will seek an order that requires Defendant to remove and/or refrain from making representations on the Products' packaging misrepresents the Products' composition.

70. Plaintiffs and prospective class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

71. The representations and omissions were relied on by plaintiff and class members, who paid more than they would have, causing damages.

<u>Violations of California's False Advertising and Unfair Competition Law</u>
(On Behalf of California Subclass)

72. Jane Doe California Plaintiff realleges paragraphs above.

73. Defendant falsely advertised the Products by representing they would receive

"lifetime" updates, understood by plaintiff and the class to mean until their devices were no longer functional.

74. Jane Doe California Plaintiff and other members of the California Subclass were injury in fact and lost money or property as a result of Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.

75. Jane Doe California Plaintiff seeks an order requiring Defendant to remove and/or refrain from making the representations on the Products' packaging.

Violations of California's Unfair Competition Law
(On Behalf of the California Subclass)

76. Jane Doe California Plaintiff realleges all paragraphs above.

77. Defendant violated California's Unfair Competition Law ("UCL") and the Bus. & Prof. Code §§ 17200-17210, as to the Jane Doe Plaintiff California Subclass by engaging in unlawful, fraudulent, and unfair conduct as a result of its violations of (a) the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9); (b) the FAL, Cal. Bus. & Prof. Code § 17500 et seq.; and (c) the Cal. Bus. & Prof. Code §§ 17580-17581.

78. Defendant's acts and practices violate the UCL's proscription against fraudulent and unfair conduct.

79. Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

80. Jane Doe California Plaintiff and other members of the California Subclass were deceived due to Defendant's marketing, advertising, packaging, and labeling of the Products, which misrepresent and/or omit the true facts.

81. Jane Doe California Plaintiff and the other California Subclass members suffered

substantial injury by buying Products they would not have purchased absent the unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by paying a premium price for the Products.

82. There is no benefit to consumers or competition by deceptively marketing and labeling the Products.

83. Pursuant to California Business and Professional Code § 17203, Jane Doe California Plaintiff and the California Subclass seek an order that Defendant:

   (a) remove and/or refrain from making representations on the Products' packaging which are misleading;

   (b) provide restitution to Jane Doe California Plaintiff and the other California Class members;

   (c) disgorge all revenues obtained as a result of violations of the UCL; and

   (d) pay Jane Doe California Plaintiff and the California Subclass' attorney fees and costs.

Negligent Misrepresentation

84. Plaintiff incorporates by references all preceding paragraphs.

85. Defendant misrepresented the Products and took advantage of cognitive shortcuts made by consumers at the point-of-sale.

86. Defendant had a duty to disclose and/or provide a non-deceptive, lawful description and emphasis of the Products' attributes and qualities.

87. This duty is based on defendant's position as a trusted entity which has held itself out as having special knowledge in the production, service and/or sale of the product type.

88. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

89. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, thereby suffering damages.

Breach of Express Warranty and Implied Warranty of Merchantability

90. Plaintiff incorporates by references all preceding paragraphs.

91. Defendant manufactures and sells products which misrepresent their qualities and attributes.

92. Defendant warranted to plaintiff and class members that the Products would receive updates until the point at which the typical device failed to function based on its standard and customary usage which was not truthful and misleading.

93. Plaintiff desired to purchase products which were as described by defendant.

94. Defendant had a duty to disclose and/or provide a non-deceptive description of the Products and knew or should have known same were false or misleading.

95. The Products did not conform to their affirmations of fact and promises, wholly due to defendant's actions.

96. The Products were not merchantable in their final sale form.

97. Plaintiff and class members relied on defendant's claims, paying more than they would have.

Fraud

98. Plaintiff incorporates by references all preceding paragraphs.

99. Defendant's actions were motivated by increasing their market share amongst toaster companies in the navigational devices market and to induce consumers to subscribe to additional

services.

100. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

## Unjust Enrichment

101. Plaintiff incorporates by references all preceding paragraphs.

102. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE,** plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff(s) as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct such practices to comply with the law;

3. Injunctive relief for members of the New York Subclass pursuant to GBL §§ 349 and 350, without limitation;

4. An award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff and members of the California Subclass;

5. An award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for Jane Doe California Plaintiff members of the California Subclass;

6. An order enjoining Defendant, pursuant to California Business and Professions Code §§

17

17203 and 17535, to remove and/or refrain from using representations on Defendant's Products described here;

7. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law, GBL, CLRA and other statutory claims;

8. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

9. Such other and further relief as the Court deems just and proper.

Dated: May 22, 2019

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan (SS-8533)
505 Northern Blvd., Suite 311
Great Neck, NY 11021
(516) 303-0552
spencer@spencersheehan.com

7:19-cv-04706
United States District Court
Southern District of New York

Francis McVetty, Jane Doe individually and on behalf of all others similarly situated

Plaintiff

- against -

Garmin USA, Inc.

Defendant

Complaint

Sheehan & Associates, P.C.
505 Northern Blvd., #311
Great Neck, NY 11021
Tel: (516) 303-0052
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: May 22, 2019

/s/ Spencer Sheehan
Spencer Sheehan